UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE ALLEN, )<br>  )<br>    d/b/a X3 Logistics, LLC, )<br>  )<br>        Plaintiff, )<br>  )<br>vs. )<br>  )<br>THE UNITED STATES, )<br>  )<br>        Defendant. ) | No. 3:19-cv-01065-GCS |

**MEMORANDUM AND ORDER**

**SISON, Magistrate Judge:**

Plaintiff Tyrone Allen, doing business as X3 Logistics, LLC, brings an action against Defendant United States under 15 U.S.C. § 1 of the Sherman Antitrust Act. Before this Court is Plaintiff's motion to amend his complaint under Federal Rule of Civil Procedure 15(a)(2) (Doc. 28) and Defendant's motion to dismiss under Rule 12(b)(6) (Doc. 24). For the reasons delineated below, this Court **DENIES** Plaintiff's motion to amend and **GRANTS** Defendant's motion to dismiss.

FACTUAL ALLEGATIONS

Allen is the president and owner of X3 Logistics, LLC, ("X3") a freight forwarder/broker and vendor of transportation services. (Doc. 19, ¶ 1, 6). Before 2010, the Military Surface Deployment and Distribution Command ("SDDC") of the United States Armed Forces had approved X3 as a Transportation Service Provider ("TSP"). (Doc. 19, ¶ 6). As a TSP for the United States military, X3 coordinated shipping of United States military equipment. (Doc. 1, ¶ 10).

Plaintiff alleges that in 2010 several government employees of the SDDC and Defense Contract Management Agency ("DMCA") launched a conspiracy to "destroy Plaintiff's business." (Doc. 19, ¶¶ 16-17). According to Plaintiff, on February 8, 2010, these government employees circulated a secret memo advising government installations, the DCMA, shippers, and other TSPs that X3 was immediately being placed on non-use status. (Doc. 19, ¶ 17). This memo was circulated, Plaintiff alleges, without authorization from the Deputy Chief of Staff for Operations or consultation with the SDDC Staff Judge Advocate. (Doc. 19, ¶ 19).

On March 31, 2010, a TSP Review Board imposed a 180-day probationary period on Plaintiff. (Ex. 6). During this period, the Review Board required Plaintiff to satisfy outstanding debts from his subcontractors and avoid instances of unsatisfactory performance. (Ex. 6). When Plaintiff failed to meet these conditions, the Review Board officially placed X3 on non-use status on October 20, 2010, for two years. (Doc. 19, ¶ 24, Ex. 6). Plaintiff claims that he appealed the SDDC decision on November 4, 2010, but government employees "buried the appeal" to make it untimely. (Doc. 19, ¶ 24).

At some unspecified time, Plaintiff made allegations of misconduct against government employees. (Doc. 19, ¶ 24). A government investigator investigated Plaintiff's claims. (Doc. 19, ¶ 26). He found that SDDC personnel violated SDDC rules, but concluded that the decision to place X3 on non-use status was proper. (Doc. 19, ¶ 26, Ex. 10). Plaintiff also submitted a "complaint" under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, and a request for other forms of relief to the SDDC. (Doc. 19, ¶ 29). On

May 12, 2012, the government denied Plaintiff's complaint and his requested relief. (Doc. 19, ¶ 15, Ex. 3).

Plaintiff makes additional allegations against government employees of engaging in a conspiracy designed to destroy his business. The allegations include interfering with settlement negotiations between him and the SDDC, (Doc. 19, ¶ 16), filing false complaints against X3, (Doc. 19, ¶¶ 31, 33), and changing the SDDC's rules governing TSPs specifically to prevent him from reregistering as a TSP. (Doc. 19, ¶¶ 10-12).

On October 1, 2019, Plaintiff filed a complaint against the United States alleging three breach of contract claims. (Doc. 1). On January 22, 2020, Plaintiff filed an amended complaint that replaced his breach of contract claims with a single claim under 15 U.S.C. § 1 of the Sherman Antitrust Act. (Doc. 19). Defendant moved to dismiss the amended complaint on February 4, 2020. (Doc. 24). Thereafter, Plaintiff filed a motion to amend his amended complaint, (Doc. 28), and "filed" his second amended complaint on March 18, 2020 without leave of Court. (Doc. 29).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(2) provides that, if a party cannot amend under 15(a)(1), it may only amend its pleading "with the opposing party's written consent or the court's leave." FED. R. CIV. PROC. 15(a)(2). Upon a request to amend, a court "should freely give leave when justice so requires." *Id.* However, a court may deny leave to a moving party "if the amendment would be futile." *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013)(citing *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432

(7th Cir. 2009)).  An amendment would be futile if "the new pleading would not survive a motion to dismiss."  *Id.* (citing *Brunt v. SEIU*, 284 F.3d 715, 720-721 (7th Cir. 2002)).

A complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009).  To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(citing *Twombly*, 550 U.S. at 555 (quoting FED. R. CIV. PROC. 8(a)(2)).  In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief."  *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)(citing *Iqbal*, 556 U.S. at 677-678).  A complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level.  *Id.*

## ANALYSIS

Plaintiff requests that he be permitted to amend his complaint to include new claims his counsel discovered while doing research.  In response, the United States contends that Plaintiff's new claims are futile because they would not survive a motion to dismiss.  The Court agrees that Plaintiff's new claims would not survive a motion to dismiss because Count II fails to a state a claim upon which relief could be granted and Counts III through V are barred by sovereign immunity.  Therefore, this Court denies Plaintiff's motion to amend.

I.     **Count II of Plaintiff's Second Amended Complaint**

In his second amended complaint, Plaintiff presents a novel argument that "Civil Ex Post Facto[1] in accordance with the Supreme Court case *Air Liquid Systems Corporation v. DeVries* prohibited Defendant from changing rules governing TSPs to prevent Plaintiff from reregistering as a TSP. (Doc. 28, p. 11). Because the rule change harmed his business, Plaintiff argues he is entitled to relief.

In *DeVries*, a maritime tort case, the Supreme Court imposed a duty to warn on product manufacturers when "(i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 993, 995 (2019).

Frankly, this Court is puzzled as to how a maritime tort case, in conjunction with Plaintiff's invocation of the *ex post facto* clause of the United States Constitution, grants Plaintiff a cause of action in this case. The *ex post facto* clause "applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). *See also Weaver v. Graham*, 450 U.S. 24, 28 (1981)(stating that "[t]he *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'")(quoting *Cummings v. Missouri*,

---

[1]     Plaintiff does not define "Civil Ex Post Facto" nor provide any cases referencing the term.

71 U.S. 277, 325-326 (1867)). Because the alleged SDDC rule change does not impose punishment, the ex post facto clause is inapplicable. Moreover, because Plaintiff does not allege that he was harmed by a product manufactured by the United States, the duty to warn set forth in *DeVries* does not apply. *DeVries* and "Civil Ex Post Facto" do not provide a basis for relief to Plaintiff. Count II would not survive a motion to dismiss, and thus its inclusion in an amended complaint would be futile.

II.     **Counts III, IV, and V of Plaintiff's Second Amended Complaint**

In Counts III through V, Plaintiff seeks to hold Defendant liable for conspiring to harm his business under 42 U.S.C. §§ 1983, 1985, and 1986 respectively. Defendant responds that the sovereign immunity of the United States bars liability under these statutory provisions. The Court agrees.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)(quoting 42 U.S.C. § 1983). Conspiracy to deprive a civil right is insufficient; there must be an actual denial of a civil right to impose § 1983 liability. *See Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982).

Section 1985(c) prohibits two or more persons from conspiring to deprive "any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(c). A cause of action under § 1985(3) requires the following: "(1) a conspiracy (2) for the purpose of depriving a person . . . of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property,

or a deprivation of a right or privilege of a citizen of the United States." *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-587 (2nd Cir. 1988)(citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)).

Section 1986 provides,

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . .

42 U.S.C. § 1986. Thus, § 1986 covers those who are aware of, but not members of, a § 1985 conspiracy.

To maintain suit against the United States, a plaintiff "must identify a statute that confers subject matter jurisdiction on the district court . . . [and] a federal law that waives the sovereign immunity of the United States to the cause of action." *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002). In this case, Plaintiff has failed to satisfy these requirements. It is clear to the Court that sovereign immunity shields the United States from liability under §§ 1983, 1985, and 1986. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 (1989)(holding that sovereign immunity applies in § 1983 cases); *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000)(stating that "[s]overeign immunity . . . bars §§ 1985(3) and 1986 suits brought against the United States . . . ."). Sovereign immunity thus deprives the Court of subject matter jurisdiction to consider Plaintiff's case. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983). Therefore, Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 would not survive a motion to dismiss, and their inclusion in the complaint would be futile.

In summation, this Court concludes that Count II fails to state a claim upon which relief can be granted and Counts III through V are barred by sovereign immunity. Because inclusion of each count in Plaintiff's complaint is futile, this Court denies Plaintiff's motion to amend.

## II.    Count I of Plaintiff's Amended Complaint

Having disposed of Plaintiff's motion to amend, this Court now turns to Defendant's motion to dismiss. Plaintiff's amended complaint alleges that Defendant engaged in a conspiracy in restraint of trade in violation of 15 U.S.C. § 1 of the Sherman Antitrust Act. This Court finds that because § 1 of the Sherman Antitrust Act does not subject the United States to liability, Plaintiff's amended complaint fails to state a claim upon which relief could be granted.

Section 1 of the Sherman Antitrust Act provides, "[e]very . . . conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The provision imposes liability on "every person" who forms such a conspiracy. *Id.* The Act states that a "person" in section 1 includes "corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country." 15 U.S.C. § 7.

A cursory textual analysis reveals that the United States does not fall within the definition of a "person" under Section 1 of the Sherman Antitrust Act. Moreover, in the absence of an expressly stated intent, usually in the form of a definition, there is a presumption that the term "person" does not include the sovereign. *See Return Mail, Inc.*

*v. United States Postal Serv.*, 139 S. Ct. 1853, 1861-62 (2019).  The Supreme Court has accordingly confirmed that the United States is not subject to the antitrust statute.  *See, e.g., U.S. Postal Serv. v. Flamingo Indus. (USA) LTD*, 540 U.S. 736, 745 (2004)(noting that when enacting the Sherman Antitrust Act, Congress could not have intended that "the Government would be exposed to liability as an antitrust defendant . . . .").  *See also United States v. Cooper Corp.*, 312 U.S. 600, 606 (1941)(noting that United States could not sue for antitrust damages because it was not a person under the statute).[2]

Plaintiff provides no plausible reason for this Court to ignore statutory text and binding Supreme Court precedent.  Section 1 of the Sherman Antitrust Act does not subject the United States to liability.  Therefore, Plaintiff fails to state a claim upon which relief can be granted.  Plaintiff's amended complaint is therefore dismissed.

## Conclusion

For the above-stated reasons, this Court **DENIES** Plaintiff's motion to amend, (Doc. 28), **STRIKES** Plaintiff's amended complaint (Doc. 29), which he filed without leave of the Court, and **GRANTS** Defendants' motion to dismiss (Doc. 24). This Court **DISMISSES with prejudice** Plaintiff's cause of action against the United States of America.  To the extent Plaintiff sought to bring claims against individuals not included in the case caption, these individuals are not treated as named defendants in this case, and any claims against them are dismissed without prejudice. *See Myles v. United States*,

---

[2]    The antitrust statute was later amended to allow the United States to bring an antitrust suit.  *See* 15 U.S.C. § 15a.  Despite that amendment, the Supreme Court noted that Congress did not change the definition of "person" under the statute and that *Cooper's* reasoning and conclusion that the United States was not an antitrust "person" that could be sued as a defendant was not altered by Congress's amendment of the statute.  *See Flamingo Industries*, 540 U.S. at 745.

416 F.3d 551, 551–552 (7th Cir. 2005)(noting that defendants must be "specif[ied] in the caption"). Plaintiff shall take nothing from this matter. Further, this Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Dated: May 22, 2020.

Digitally signed by Judge Sison
Date: 2020.05.22 15:58:31 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**